IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATASHA HARP<br>1115 W. Lafayette Street<br>Norristown, PA 19401<br><br>and<br><br>TASHIANNA HARP<br>3835 Mill Road<br>Collegeville, PA 19426<br>                Plaintiffs<br><br>vs.<br><br>KEY AUTOMOTIVE SALES<br>& SERVICE, INC.<br>101 W. Erie Avenue<br>Philadelphia, PA 19140<br><br>and<br><br>CREDIT ACCEPTANCE CORPORATION<br>25505 West 12 Mile Road<br>Southfield, MI  48034<br>                Defendants | CIVIL ACTION<br><br><br><br>NO. 16-4663(BMS) |

## AMENDED COMPLAINT

I.    **INTRODUCTION**

    1.    This is another case of car dealer fraud by Key Automotive Sales & Service, Inc. of Philadelphia, PA ("Key").

    2.    Plaintiff, Tashianna Harp ("Tashianna") visited Key in March of 2016 to look for a reliable used car. However, Key orchestrated a consumer fraud upon the Plaintiffs and upon the vehicle lender by surreptitiously increasing the sales price of the vehicle while inflating the down payment, creating false finance paperwork, doctoring up bank statements to make it appear that Tashianna was co-owner of her mother, Natasha's, bank account and arranging a bogus auto loan

1

closing. At the closing, with Tashianna alone present, Key with the use of a new "electronic signature pad," made it appear that Natasha was present, had signed, and had received sale and financing documents when Key did not make any disclosures to Natasha, the co-borrower. Moreover, Key sold Plaintiffs a high mileage, overpriced clunker that, despite a total stated sale price of $26,013.00 completely failed within three months of delivery.

3. Defendant's conduct violates the federal Truth-in-Lending Act, the Credit Repair Organizations Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law and its implementing regulations, and the common law. She seeks damages, rescission and a declaratory judgment.

## II. PARTIES

4. Plaintiff Tashianna Harp is an adult individual, 20 years of age, who lives with her aunt and uncle at 3835 Mill Road, Collegeville, PA 19426 in Montgomery County.

5. Plaintiff Natasha Harp is Tashianna's mother ("Natasha"). Natasha lives at 1115 West Lafayette Street, Norristown, PA 19401.

6. Defendant Key Automotive Sales & Service, Inc. is a Pennsylvania corporation with a location for the regular transaction of business in Philadelphia, PA. Key is believed to be licensed by the Commonwealth of Pennsylvania to sell and to finance motor vehicles.

7. Defendant Credit Acceptance Corporation is incorporated under the laws of the state of Michigan and has a business address as captioned.

## III. JURISDICTION

8. Federal question jurisdiction is premised upon violations of the Truth-in-Lending Act, 15 U.S.C. § 1640 ("TILA") and the Credit Repair Organizations Act, 15 U.S.C. § 1679

("CROA"), actionable through 28 U.S.C. § 1331, 1337. The Court has supplemental jurisdiction over the state law claims, 28 U.S.C. § 1367.

### IV.   FACTS

9. On or about March 28, 2016, Tashianna Harp went out to shop for a reliable late model used car, along with her mother, Natasha.

10. They visited Key in Philadelphia. Tashianna and Natasha were greeted by a salesman who immediately steered them to a 2012 Kia Optima with 86,000 miles on it.

11. Tashianna was told by Key's salesman that the Kia carried a listed price of $14,000.00 but that Key would sell her the car for $12,000.00.

12. Tashianna made known that she would shortly be receiving a bonus and would have $2,000.00 down payment to put down towards the purchase price.

13. On or about March 28, 2016, Key took Tashianna's down payment of $2,000.00 and gave her a receipt for it. Key told Tashianna that it would be arranging the financing but wanted some additional documentation. Key told Tashianna that she could drive the car while it pursued the financing.

14. Key advised Tashianna that her mother, Natasha, would have to be a co-signor since Tashianna was only 20 years old and had little established credit.

15. Key advised that they were going to look to arrange financing. Key asked Natasha to supply bank statements, which Natasha did. The bank statements reflected an account at Wells Fargo, in Natasha's name alone. Key contacted Tashianna to return to the dealership to sign the sales and finance documents. Tashianna returned to the dealership on or about April 19, 2016.

16. Key ultimately obtained financing from defendant Credit Acceptance Corporation. A retail installment sale contract was assigned to CAC.

3

17. CAC chose to include language in the RISC making it liable for the actions of the seller, Key: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER."

18. On April 19, 2016, Tashianna returned to the dealership, alone. At that point in time, Key had made up a series of sale and finance documents. Under those documents, both Plaintiffs Natasha and Tashianna were listed as buyer and co-buyer. Key did not object to Natasha's absence.

19. Natasha obviously was not at the Key premises on April 19, 2016. Key did not present Natasha with, and Natasha did not review, any contract documents, any Truth-in-Lending disclosure statement, or any other sale or finance documents on that date, before purported consummation.

20. Key, rather than provide readable paper copies of the sale and finance documents for Tashianna, simply brought up a series of signature screens on an electronic signature pad and instructed Tashianna to "sign here, sign here."

21. Although Natasha was not present, Key directed Tashianna to sign Natasha's name or initials to the various lines on a small key pad.

22. Before closing but without disclosure to young Tashianna, Key surreptitiously increased the sale price from the agreed upon $12,000.00 to $14,995.00  Tashianna was not presented with the contract documents to review at the time of the transaction and thus had no opportunity to take note of the discrepant sales price.

23. Key also inflated the amount of the down payment from $2,000.00 to $2,500.00.

24.   Inflation of the down payment by $500.00 coupled with inflation of the sale price by $2,995.00 had the net effect of selling the vehicle at a greatly inflated sale price, misleading the lender about the bona fides of the transaction, and depriving the borrower of an accurate disclosure statement reflecting the true and accurate financial terms of the consumer credit transaction.

25.   In addition to setting forth inflated and inaccurate figures for the sale price and the down payment, Key failed to deliver a true and accurate copy of the Truth-In-Lending disclosure statement to Tashianna at or before the time she initialed and therefore became obligated on the transaction. This violates Regulation Z, 12 CFR 1026.17(b).

26.   In addition, because Natasha was not present on April 19, 2016, she did not agree to any of the terms, did not sign any of the documents, and was not presented with the requisite Truth-In-Lending disclosure statement before she ostensibly became liable as a co-borrower. *Id.*

27.   In connection with the sale and the financing of the vehicle and the profit Key derived therefrom, Key made and encouraged Tashianna to make an untrue or misleading statements with respect to her credit worthiness or credit capacity to potential lenders. This violates the CROA, 15 U.S.C. § 1679b(a).

28.   Key also took other fraudulent and improper steps in the financing of the transaction including (a) showing Tashianna's address as "Black Horse, PA", the same address as Natasha. Key knew that Tashianna lived in Collegeville, PA – as listed on her driver's license – and did not live with her mother at the Black Horse, PA address. Key created this false information to obtain credit.

29.   The Key finance office also created a phony bank statement. At Key's request, Natasha forwarded a copy of her recent bank statement from Wells Fargo Bank. The Key

representative actually altered the document by removing Natasha's name and address and replacing it with both Natasha's name and Tashianna's name and address. Key did so to make it appear that Natasha's account was a joint bank account and that she and Tashianna lived together. Key knew this was false.

30. Key instructed Tashianna, a 20 year old young woman purchasing her first car, to simply sign Natasha's name to the various documents. Tashianna complied, in the presence of the Key finance officer. This also violates the provisions of CROA, 15 U.S.C. § 1679b(a).

31. Moreover, the vehicle, the 2012 Kia Optima, had serious mechanical problems that were known or should have been known by Key. These were undisclosed to Tashianna.

32. As a result, within ninety (90) days of the purchase, the engine of the vehicle completely seized, and the car required a new starter and new battery, among other costly repairs.

33. Although some of these repairs were covered under a service contract of sorts, Tashianna still had loss of use of the vehicle for extended periods of time (causing her considerable inconvenience and loss of income) and Tashianna had to expend over $500.00 towards co-pay and deductibles for the repairs.

## COUNT I – TRUTH-IN-LENDING ACT

34. Plaintiffs incorporate the allegations contained above as if the same were here set forth at length.

35. Plaintiffs are "consumers" as set forth in the TILA, 15 U.S.C. § 1602(i). Defendant is a "creditor" as set forth in the TILA, 15 U.S.C. § 1602(g).

36. The seller and creditor on the face of the Retail Installment Sale Contract ("RISC") was Key. The RISC reflected a "credit sale" transaction subject to TILA, 15 U.S.C. § 1602(h).

37. Defendants failed to deliver any material disclosures to Natasha despite purporting to render her liable under the RISC.

38. Defendants failed to deliver material disclosures to Tashianna in a form she could keep prior to consummation.

39. The disclosure ultimately provided to Tashianna is misleading and inaccurate. It overstates the true sale price by $2,995.00 and overstates the down payment by $500.00.

40. These defects impair the consumer's ability to meaningfully compare the cost of credit and credit terms and violates TILA.

**WHEREFORE**, Plaintiffs, Tashianna Harp and Natasha Harp, respectfully asks this Court to grant:

(a) Actual damages;

(b) Statutory damages;

(c) Reasonable attorney's fees and costs; and

(d) Such other relief as the Court shall deem just and proper.

## COUNT II – CREDIT REPAIR ORGANIZATIONS ACT

41. Plaintiffs incorporate the allegations contained above as if the same were here set forth at length.

42. Defendants' actions in creating a phony loan application and contract for Natasha, reporting false residence information, doctoring up banking documents to appear that Tashianna was a joint account holder, and misrepresenting the credit terms constitutes the making of untrue or misleading statements with respect to Plaintiff's creditworthiness.

43. Defendants' conduct violates the CROA.

WHEREFORE, Plaintiffs, Tashianna Harp and Natasha Harp, respectfully asks this Court to grant:

(a)   Actual damages;

(b)   Punitive damages;

(c)   Reasonable attorney's fees and costs; and

(d)   Such other relief as the Court shall deem just and proper.

### COUNT III – UNFAIR TRADE PRACTICES & CONSUMER PROTECTION LAW

44.   Plaintiffs incorporate the allegations contained above as if the same were here set forth at length.

45.   Defendants are persons engaged in trade and commerce as defined at 73 P.S. § 201-2(2), (3).

46.   The aforesaid conduct is unfair and deceptive including:

(a)   Misrepresenting the sale price;

(b)   Inflating the sale price;

(c)   Inflating the ostensible down payment;

(d)   Preparing bogus and deceptive financing documents;

(e)   Attempting to bind Natasha to a sale and finance agreement by use of a difficult to follow keypad signature process and faking Natasha's presence and agreement to terms;

(f)   Selling an overpriced car with known serious defects, so significant that the vehicle completely failed within 3 months.

47.   Defendants' conduct constitutes violations the Unfair Trade Practices and Consumer Protection Law:

(a) 73 P.S. § 201-2(vii) representing that goods are of a particular standard, quality or grade; if they are of another;

(b) 73 P.S. § 201-2(ix) advertising goods with intend not to sell them as advertised;

(c) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(d) Failing to conspicuously state or list the conditions precedent to acceptance of the contract in a clear and conspicuous manner, or advise that Plaintiffs had the right to cancel. 37 Pa. Code § 301.4(a)(2);

(e) Failing to provide the purchaser(s) at no additional charge an exact copy of each document required by law to be provided including, but not limited to the agreement of sale, installment sales contract, odometer statement, and warranty and other documents in which legal obligations are imposed on the buyer. Copies of other documents signed by the purchaser(s) and requested by the purchaser(s) shall be made available for a reasonable fee. 37 Pa. Code § 301.4(a)(3).

**WHEREFORE**, Plaintiffs, Tashianna Harp and Natasha Harp, respectfully asks this Court to grant:

(a) Actual damages;

(b) Treble damages;

(c) Restitution;

(d) Rescission;

(e) Reasonable attorney's fees and costs; and

(f) Such other relief as the Court shall deem just and proper.

## COUNT IV – DECLARATORY RELIEF

48.     Plaintiffs incorporate the allegations contained above as if the same were here set forth at length.

49.     Plaintiffs seek a declaratory ruling that neither Tashianna nor Natasha is liable under the agreement, and all sums paid to date shall be refunded.

V.     **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury as to all issues so triable.

Respectfully submitted:

Date: 9/19/16

CARY L. FLITTER
ANDREW M. MILZ
Attorneys for Plaintiffs

FLITTER MILZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA  19072
(610) 822-0782

10